# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| United States of America, ) | |
| ) | Criminal No.: 2:05-cr-00928 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ) | |
| Michael A. Singer, ) | |
|   a/k/a Mickey Singer ) | |
| John H. Kang, ) | |
| John P. Sessions, ) | |
| Charles L. Hutchinson, ) | |
|   a/k/a Charlie Hutchinson ) | **ORDER** |
| David A. Ward, ) | |
| Frederick B. Karl, Jr., ) | |
|   a/k/a Rick Karl ) | |
| Franklyn M. Krieger, ) | |
|   a/k/a Frank Krieger ) | |
| Ted W. Dorman, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on defendants' motion in limine[1] to exclude use by the government of handwritten notes ("secretarial notes") taken by Mrs. Sandy Plumb ("Mrs. Plumb"), secretary to defendant Michael Singer, during weekly conference calls held by Medical Manager executives. The government opposes defendants' motion and contends that all of these secretarial notes are business records and, therefore, admissible under

---

[1] Defendants' motion actually requested an evidentiary hearing on the matter outside the presence of the jury. Defendants received the requested relief as the court has held two hearings on whether the secretarial notes qualify as business records. This order addresses the outcome of those hearings.

1

Federal Rule of Evidence 803(6). The government also argues that in the event the notes do not qualify as business records, they should be admitted as present sense impressions under Rule 803(1) and/or as past recollections recorded under Rule 803(5). For the reasons set forth below, the court finds that the notes do not qualify as business records, nor are they admissible as present sense impressions.

## I. STANDARD OF REVIEW

The government, as the proponent of the material, must establish the elements required for admission by a preponderance of the evidence. See United States v. Neal, 78 F.3d 901, 905 (4th Cir. 1996).

## II. DISCUSSION

"Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801. The hearsay rule "only applies to intentionally assertive verbal or non-verbal conduct, and its goal is to guard against the risk associated with testimonial evidence: perception, memory, sincerity and narration." Lorraine v. Markel Am. Ins. Co., 241 F.R.D. 534, 563 (D. Md. 2007). Rule 802 prohibits admission of hearsay evidence unless permitted by another rule. Fed. R. Evid. 802.

Business records are not excluded by the hearsay rule. Fed. R. Evid. 803(6). The business records exception is based on the presumption of reliability and trustworthiness in records "prepared in the ordinary course of business." Certain Underwriters at Lloyd's, London v. Sinkovich, 232 F.3d 200, 204 (4th Cir. 2000). Rule 803(6) provides,

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or

> from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Fed. R. Evid. 803(6). To admit a document into evidence as a business record, the proponent must show: (1) that the record was made at or near the time by a person with knowledge[2]; (2) that the record was kept in the course of a regularly conducted business activity; and (3) that it was the regular practice of that business activity to make the record. Id. Even if a document meets these requirements, it may still be excluded if "the source of information or method or circumstances of preparation indicate a lack of trustworthiness." Id.

The business records exception requires that a record be "kept in the course of a regularly conducted business activity." Fed. R. Evid. 803(6). The "mere presence of a document . . . in the retained files of a business entity does not by itself qualify that document as a record of regularly conducted activity." Rambus v. Infineon Techs. AG, 348 F. Supp. 2d 698, 704 (E.D. Va. 2004). "[A] record is considered kept in the ordinary course of business when it is made pursuant to established procedures for the routine and timely making and preserving of business records, and is relied upon by the business in the

---

[2]Defendants do not appear to take issue with the fact that Mrs. Plumb authored the majority of the notes taken during the calls. However, the court understands that defendants do not concede that Mrs. Plumb is a "person with knowledge" as she admits she did not understand much of the substantive matters that were discussed during the calls. Doc. No. 729, Def. Ex. 6. Because this issue is not determinative to the outcome of this motion, it is not necessary to discuss it in detail.

performance of its functions." Id. (quoting United States v. Wells, 262 F.3d 455, 463 n.8 (5th Cir. 2001)).

The rule also requires that the records "must have been made as a regular practice of a 'regularly conducted activity' to make and keep the record at issue." Id. at 704-05. To meet this requirement, the record has to be "made and kept as a regular practice by the business activity from which the document comes." Id. at 705. Moreover, "[i]t is not enough that a particular employee regularly makes and keeps the records as his or her own regular practice because it must be the regular practice of the business (e.g., the 'regularly conducted activity') to make and keep the record at issue." Id. According to the Advisory Committee Notes to Rule 803(6),

> [t]he element of unusual reliability of business records is . . . supplied by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation.

Fed. R. Evid. 803(6) advisory committee notes.

"Whether evidence is admissible under Rule 803(6) is 'chiefly a matter of trustworthiness.'" Wells, 262 F.3d at 459-60 (quoting Miss. River Grain Elevator, Inc. v. Bartlett & Co., 659 F.2d 1314, 1319 (5th Cir. 1981)). It is a "principal" precondition to admission that the documents "have sufficient indicia of trustworthiness." United States v. Friedin, 849 F.2d 716, 723 (2d Cir. 1988).

As an initial matter, the court recognizes that the notes written by Mrs. Plumb are hearsay.[3] The written notes, and the spoken statements included therein, are conduct "that

---

[3]In addition, many of these records contain hearsay within hearsay.

is intended by a human declarant to be assertive." Lorraine, 241 F.R.D. at 563. The government intends to introduce the notes into evidence to show the truth of the matter asserted, i.e., that defendants conspired to commit accounting fraud. For example, the government would like to use portions of "ECN 182." This note includes the phrase:

> CSC – was discussed – (1.2m. net cost)
> 2.4m asset purch. pd. 1.2 Back in
> purchase –          MAS has spd to be different
> There is a 300k discrepancy

The evidentiary value of this note is to show that individuals on the call discussed the allegedly fraudulent CSC acquisition, that the deal had a purchase price of 2.4m, that the target paid 1.2 back in the purchase deal (an allegedly fraudulent "round-trip" transaction), and that Mr. Singer knew that there was a $300,000 discrepancy. In other words, it is an out of court statement to prove the truth of what is written in the note, i.e., the existence of the conspiracy. The government intends to use the notes to prove that certain individuals discussed certain topics (presumably in furtherance of the conspiracy). Doc. No. 651, Govt. Resp. at 3. Thus, it is clear that these notes are hearsay.

Because the court finds these notes are hearsay, the court's analysis starts from the premise that they are inadmissible. Therefore, the government must show by a preponderance of the evidence that these notes are admissible because they qualify for an exception. Defendants are not required to prove that these notes are not business records. It is important that the government has offered nothing affirmative to prove these documents are records of Medical Manager. The essence of the government's argument appears to be that these notes were obtained from a search of Medical Manager's office. Thus, the argument continues, because Medical Manager is a business and the conference calls took

place weekly, these notes are business records. If that proposition were true, then every single paper, email, or document of any kind generated by a business or its employees would be admissible evidence under the business records exception.

These notes were not kept in the course of "a regularly conducted activity." The government asserts that the regularly conducted activity is the weekly conference calls. The court agrees that the calls occurred regularly; however, simply because the calls occurred regularly does not mean that Mrs. Plumb's handwritten notes of what was discussed during the calls are business records.

Moreover, after review, the records were not kept as part of the usual course of <u>Medical Manager's business</u>. Stated differently, the notes were not made "pursuant to established procedures for the routine and timely making and preserving of business records, and [were not] relied upon by [Medical Manager] in the performance of its functions." <u>Rambus, Inc.</u>, 348 F. Supp. 2d at 704 (quoting <u>Wells</u>, 262 F.3d at 463 n.8). These notes were not made as the "regular business practice" of Medical Manager. <u>See</u> <u>United States v. Simmons</u>, 773 F.2d 1455, n.4 (4th Cir. 1985). In fact, three declarations support defendants' argument that there was no business purpose or need for these notes. <u>See</u> Doc. No. 729, Def. Ex. 5-6, 8. These declarations clearly establish that these notes were not a corporate undertaking. <u>Id.</u> The fact that Mr. Singer instructed Mrs. Plumb to keep track of items that required follow-up on his part does not convert everything in the notes into the business practice of Medical Manager.

Additionally, the business activity from which these notes came was the weekly conference calls. These notes clearly were not made and kept as part of those calls. In fact,

Mr. Karl circulated a memorandum informing employees that full notes of the conference calls would not be made but "if any substantive policy directive emerges, we will follow it up in writing where appropriate." Doc. No. 729, Def. Ex. 4. Moreover, the notes were not reviewed, adopted, or edited by any other individual within Medical Manager. Id. at Ex. 8. As a matter of fact, there is no evidence that the notes were ever seen by anyone other than Mrs. Plumb. Mrs. Plumb retained her notes and did not provide the original notes or copies to anyone including Mr. Singer. Id. at Ex. 9. By contrast, Mrs. Plumb did take minutes for Medical Manager Board meetings. Id. at Ex. 3. "Following these meetings, she organized the notes and delivered them to Rick Karl's office who maintained them." Id. The differences between Mrs. Plumb's handwritten notes of the conference calls and the official minutes of Board meetings persuades the court that these notes were not made in the regular practice of Medical Manager's regularly conducted activity.

Even if the formal requirements of 803(6) were met, and the court does not believe they are, the notes are still inadmissible hearsay if "the source of information or the method or circumstances of preparation indicate lack of trustworthiness." Fed. R. Evid. 803(6). Mrs. Plumb declared that her notes often reflected who she <u>believed</u> participated in the call, but she admits that she "did not attempt to record every time participants joined or left the call." Doc. No. 729, Def. Ex. 6. Moreover, Mrs. Plumb was located in Alachua and had absolutely no personal knowledge of who was actually on the call in Tampa or other locations, or when participants may have joined or left the call. Id. Her "notes do not reflect when individuals dialing in from other remote locations joined or left the call." Id. Mrs. Plumb also declared that she "did not understand every topic that was discussed on the

7

conference calls." Id. Mrs. Plumb "did not attempt to record every statement," and because she "did not capture every statement that was made, [she has] no way of knowing whether something not reflected in my notes was or was not stated." Id.

Moreover, on their face, the notes are far from self-explanatory and seem incomplete. In some instances, the notes include statements that appear to be attributed to call participants. In many other instances, the notes have no such indication that what was written down was actually said by anyone. For example, in the note identified as "ECN 180," Mrs. Plumb wrote: "If Alabama falls through, we're in trouble." On that same page, there are other statements that are specifically attributed to other declarants. There is absolutely no way to tell whether someone actually uttered the aforementioned statement or whether it was merely Mrs. Plumb's personal musings regarding the content of the call. It would be just as reasonable to assume that Mrs. Plumb wrote that statement down of her own accord as it would be to attribute it to another declarant.

As another example of the inconsistencies or inaccuracies in these notes, "ECN 019" lists only "MAS"[4] as a participant on the call. There are other names mentioned in the note but the note does not identify them as participants. Presumably "MAS" did not confer with himself, but there is absolutely no way to identify who else may have either participated in the call or made some or all of these statements. Yet, the government wishes to introduce the section of the note that states: "Discussion of how to recognize the income." The lack of any other identifiable participants indicates the lack of trustworthiness in the preparation of this note as a "business record" of the call. Moreover, both Mr. Singer and Mr. Karl

---

[4]The court assumes "MAS" refers to Mr. Singer.

8

submitted declarations that they often left the room during the calls; however, Mrs. Plumb did not attempt to make any record of this. Doc. No. 729, Def. Ex. 5-6, 8. Mr. Karl also stated that when he was in Tampa, participants frequently left the room without notifying the others on the call. Id. at Ex. 5. Importantly, the government itself is "not very confident that the identification of participants is accurate." Id. at Ex. 2. Based on the foregoing, these notes simply cannot be considered a trustworthy or reliable record of these calls or who participated in them.

The court does not believe, nor do defendants contend, that Mrs. Plumb had a motivation to lie or be deceitful. Rather, she had no motivation at all to do anything beyond recording discrete action items that might require some follow-up by her or Mr. Singer. She admits she was concerned with only a very limited scope of these calls. It is the absence of any motivation beyond the scope of her limited charge, as opposed to an affirmative motivation to lie, that calls the trustworthiness and reliability of these documents into question.

In addition, the court notes that the only witness qualified to testify that these notes meet the requirements of Rule 803(6) is Mrs. Plumb. There is no other competent records custodian or person who can attest to anything related to these notes.[5] While the government suggests that this is to defendants' benefit, the court believes this fact counsels against a

---

[5]The court recognizes that in some instances the notes were taken by other people, but they would simply stand in Mrs. Plumb's shoes for purposes of this discussion. That is, they could only attest to their own individual notes and could not serve as a competent witness as to any other notes.

finding that these notes are business records of Medical Manager.[6]

In her declaration, Mrs. Plumb specifically stated:

> While I did not enter any deliberate falsehoods into my notes, and the notes are an accurate reflection of how I understood what was said, as noted above, I did not understand every topic being discussed. As a result, it is entirely likely that mistakes were made regarding the nature and substance of the conversations.

Doc. No. 729, Def. Ex. 6. The court cannot find that these notes qualify as business records when the maker of the notes gives such an equivocal declaration as to their reliability and trustworthiness.

Contrary to the government's assertion that these notes are the "heartland" of the exception, the court believes that if these notes qualify as business records, then the exception will swallow the rule. The notes lack any objective indicia that they qualify as business records. Moreover, the maker of the notes submitted a declaration that strongly supports the finding that these are not business records. In the face of three declarations to support the conclusion that these notes are not business records, the government has failed to introduce anything to suggest otherwise. Thus, the government cannot meet its burden for admissibility under Rule 803(6).

Additionally, the government asserts that the notes are categorically admissible as present sense impressions. "A present sense impression is 'a statement describing or explaining an event or condition made while the declarant was perceiving the event or

---

[6]Under Rule 803(6), the availability of the declarant is immaterial. Fed. R. Evid. 803(6). Thus, in theory, even in Mrs. Plumb's absence, the notes could still be admitted under the business records exception. However, Mrs. Plumb's availability and testimony is essential—without which it is impossible for these notes to qualify.

condition, or immediately thereafter.'" United States v. Jackson, 124 F.3d 607, 14 (4th Cir. 1997) (quoting Fed. R. Evid. 803(1)).

These notes include double hearsay: the notes themselves and the statements by third party declarants, whether identified or not. Even if one assumes the "event" is the conference call and Mrs. Plumb's "personal perception" is hearing (and writing down) the statements of other declarants, there is no applicable exception proffered by the government for the internal hearsay. Moreover, telephone conversations are hardly "events" as that word is commonly understood.

If, as the government contends, Mrs. Plumb's writings of the statements made by other declarants constitute a present sense impression,[7] then there is no longer a need for the hearsay rule. Under the government's theory, so long as the statement is written down, it will be a present sense impression and admissible into evidence. The court does not agree with the government's theory.

Accordingly, this court finds that the secretarial notes cannot categorically be admitted as present sense impressions.

### III. CONCLUSION

For the reasons set forth above, the court holds that the secretarial notes do not

---

[7]As previously discussed, Mrs. Plumb's notes only infrequently indicate that what she wrote down is even an actual statement. Mrs. Plumb cannot testify that she can even recall the meetings or conversations during which she took the notes or that she has any independent memory of the meetings and conversations. See Tracinda Corp. v. DaimlerChrysler AG, 362 F. Supp. 2d 487, 502 (D. Del. 2005) (distinguishing Hospital Bld. Co. v. Trustees of the Rex Hosp., 791 F.2d 288, 293 (4th Cir. 1986)). Moreover, Mrs. Plumb's declaration suggests that the notes may be inaccurate and untrustworthy. See id.

11

qualify as business records under Rule 803(6) or as present sense impressions under Rule 803(1). Because the government failed to meet its burden, defendants' motion is **GRANTED**.

      **AND IT IS SO ORDERED**.

                                        _____
                                        **DAVID C. NORTON**
                                        **CHIEF UNITED STATES DISTRICT JUDGE**

**August 26, 2009**
**Charleston, South Carolina**