## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## BEAUFORT DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | Criminal No.: 9:05-cr-00928 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| Michael A. Singer, | ) | |
|   a/k/a Mickey Singer | ) | |
| John H. Kang, | ) | |
| John P. Sessions, | ) | **ORDER** |
| David A. Ward, | ) | |
| Frederick B. Karl, Jr., | ) | |
|   a/k/a Rick Karl | ) | |
| Franklyn M. Krieger, | ) | |
|   a/k/a Frank Krieger | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

     This matter is before the court on defendants' motion *in limine* to preclude the government from offering any evidence or argument concerning what the parties refer to as "the Dryja allegations." Defendants request the court use its discretion under Federal Rule of Evidence 403 to exclude these allegations. The government asserts that it should be allowed to prove the allegations of a cover-up in the indictment. For the reasons set forth below, defendants' motion to preclude the government from offering any evidence or argument concerning the Dryja allegations is granted.

# I. **BACKGROUND**[1]

In 1997, Medical Manager acquired Computers for Medicine, a software dealership, from Richard Dryja. Following the acquisition, Dryja became an employee of Medical Manager. In 2000, Medical Manager terminated Dryja's employment. Dryja then filed a wrongful termination suit against Medical Manager.

On December 12, 2000, Dryja was deposed and revealed that in 1999 he had written Bobby Davids[2] a personal check related to software that had been developed by Computers for Medicine but that Medical Manager no longer supported. According to both sides, the original acquisition agreement did not include a sale of the software at issue. Dryja testified that Davids agreed to provide him with documentation that the software was excluded from the original purchase of Computers for Medicine in exchange for a payment of approximately $5,000 or $7,000.

The Second Superseding Indictment alleges that in 2001 defendant Krieger discovered evidence of the payment Dryja made to Davids and concealed it from the New Jersey executives. Indict. ¶ 158. The indictment also alleges that Krieger actively concealed Dryja's deposition testimony and a copy of the canceled check. Indict. ¶¶ 158-59. The indictment alleges that in February 2001, defendants Singer, Sessions, and Krieger discussed the matter and Singer requested that Sessions and Krieger not discuss the matter with the New Jersey executives. Indict. ¶¶ 161-65. According to the

---

[1]The background to "the Dryja allegations" is extensively outlined in the parties' briefs filed in accordance with this motion and numerous others.

[2]Mr. Davids is the government's chief cooperating witness.

indictment, defendants[3] knew the payment was a kickback and concealed it from the New Jersey executives to conceal the conspirators' own fraudulent conduct. Indict. ¶ 163.

In 2003, CEO Marty Wygod advised the board of directors of WebMD[4] that evidence of Davids' kickback scheme had been uncovered and a full investigation would be conducted. At some point after January 2003, defendants Krieger, Sessions, and Singer all disclosed their knowledge about the Dryja incident to WebMD attorneys.

Neither the government nor Davids has ever suggested that defendants were involved in or were even aware of Davids' kickback schemes. The government argues that in 2001 when defendants became aware of an arguably improper $5,366.00 payment Dryja made to Davids, a decision was made to conceal it from the New Jersey executives so as to prevent disclosure of their entirely separate fraudulent scheme to commit accounting fraud.

## II. DISCUSSION

Federal Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Relevant evidence is admissible unless precluded by the Constitution, Act of Congress, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court. Fed. R. Evid. 402. The rule also prohibits admission of evidence that is not relevant. Id.

---

[3]The government does not appear to argue that defendants Kang, Ward, or Karl were involved in the Dryja matter in any way. Thus, when the term "defendants" is used in this opinion it refers to defendants Singer, Sessions, and Krieger.

[4]WebMD purchased Medical Manager in 2000.

One such limit on the admission of relevant evidence is Federal Rule of Evidence 403. Rule 403 permits the exclusion of relevant evidence on the grounds of prejudice, confusion or waste of time. Fed. R. Evid. 403. The rule states: "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Id.

District courts are afforded broad discretion regarding evidentiary rulings. See Sprint/United Management Co. v. Mendelsohn, 128 S. Ct. 1140, 1145 (2008). "This is particularly true with respect to Rule 403 since it requires an 'on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that has already been found to be factually relevant.'" Id. (quoting 1 S. Childress & M. Davis, Federal Standards of Review § 4.02, p. 14-16 (3d ed. 1999)). "With respect to evidentiary questions in general and Rule 403 in particular, a district court virtually always is in a better position to assess the admissibility of the evidence in the context of the particular case before it." Id. at 1146.

> All relevant evidence is "prejudicial" in the sense that it may prejudice the party against whom it is admitted. Rule 403, however, is concerned only with "unfair" prejudice. That is, the possibility that the evidence will excite the jury to make a decision on the basis of a factor unrelated to the issues properly before it.

Mullen v. Princess Anne Volunteer Fire Co., Inc., 853 F.2d 1130, 1134 (4th Cir. 1988). The Fourth Circuit has "stated that undue prejudice occurs when there is a 'a genuine risk that the emotions of a jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence." United States v.

Aramony, 88 F.3d 1369, 1378 (4th Cir. 1996). "[C]ourts are obligated to use the power conferred by Rule 403 sparingly . . . ." Mullen, 853 F.2d at 1134. The "balance should be struck in favor of admissibility." Aramony, 88 F.3d at 1369.

At the outset, the court notes that the relevance of the Dryja evidence is marginal at best. It is not clear how a discussion defendants may have had in 2001 regarding a matter that occurred in 1999, and that they ultimately disclosed to the New Jersey executives in 2003, makes any fact related to their alleged accounting fraud conspiracy more or less likely. Defendants are correct that it requires the piling on of inferences to make this argument plausible. Defendants would have had to 1) conclude this payment was improper;[5] 2) believe that a payment of $5,366.00 to Bobby Davids would draw enough attention to cause the New Jersey executives to launch an investigation into every single acquisition and that their entirely separate criminal conspiracy would be revealed;[6] and 3) believe that despite the fact that the New Jersey executives had previously looked into a number of acquisitions and determined that only five needed to be restated. Finally, defendants themselves were the ones who disclosed the Dryja payment to the New Jersey executives after at least some evidence of Davids' unrelated multi-million dollar kickback scheme had come to light. It is far from clear how the reconstruction of these events, absent the government's argument that it is probative of criminal conduct,

---

[5]It is the court's understanding that this payment was not included in the WebMD suit against Davids to recover the stolen funds. Moreover, the government did not include this payment in its plea agreement nor did it require Davids to return the money.

[6]Further, defendants Singer, Sessions, and Krieger would have had to believe this even after they knew that WebMD had notice that Davids alone had refused to certify that all acquisitions were proper in 1999.

actually makes it more or less likely that defendants engaged in a conspiracy to commit accounting fraud.

The government argues that the discovery of Davids' multi-million dollar kickback scheme ultimately led to the discovery of defendants' alleged conspiracy to commit accounting fraud and that is precisely what defendants attempted to prevent by "concealing" the Dryja allegations in 2001. On some level of abstraction that proposition seems logical. However, a more accurate characterization of the events is that after WebMD discovered Davids' high dollar kickback scheme in 2003, he saw the handwriting on the wall and decided to go to the FBI to offer information on a separate conspiracy he believed had occurred (since he was involved in it too) at Medical Manager. The court is not aware of any evidence that shows that WebMD discovered defendants' alleged conspiracy to commit accounting fraud during the course of its investigation into Davids' separate multi-million dollar kickback scheme.

Assuming *arguendo* that evidence of the Dryja allegations is relevant, the court still finds that the probative value is undoubtedly "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. As noted above, the probative value of these allegations is particularly low. Thus, it is not difficult to imagine the balancing analysis dictated by Rule 403 to tip heavily in favor of exclusion.

First, the essence of the government's argument related to these allegations is that defendants decided to cover up Davids' $5,336.00 kickback, in which they had

absolutely no involvement, in order to cover up their own conspiracy. According to the government's theory, defendants Singer, Sessions, and Krieger (but not Ward, Karl, or Kang) covered up Davids' criminal deed. The relationship of this evidence to the charged criminal conduct is that if defendants were complicit in covering up Davids' acceptance of a $5,366.00 kickback, they would be more likely to have engaged in or have been complicit in their separate conspiracy to commit accounting fraud. However, the flaw in this reasoning is that no one, including Davids, has ever suggested that defendants had anything to do with any of his kickback schemes. Thus, the low probative value is substantially outweighed by the unfair prejudice against defendants if the jury makes this association.

Additionally, the court believes that there is a significant danger that the Dryja incident will mislead and confuse the jury. This court has extensively reviewed the issue of the Dryja incident in its various permutations. After considerable time and effort, the court is still left with the question of whether the Dryja incident was criminal in nature or merely unethical. In addition, the Dryja evidence would not be admissible against Ward, Karl, and Kang, and the jury would have to separate these defendants from these allegations. If the court cannot clearly attribute illegal meaning to the allegations, and the government's version of events is no more plausible or reasonable than any other version, the probative value is minimal where the probability of jury confusion is high.

Second, throughout this litigation, the Dryja allegations have raised numerous issues of hearsay and potential violations of the Confrontation Clause of the Sixth

Amendment.[7]  The government has conceded that it will not introduce any evidence other than lay testimony from the individuals who investigated the issue in 2003 for WebMD. The issues of hearsay and potential Confrontation Clause violations relate to the testimony of primarily one individual, Michael Glick, but possibly two other people. Glick would provide factual testimony about the disclosures defendants made to him in 2003 regarding the Dryja incident.  Glick would describe what Singer, Sessions, and Krieger told him in 2003 about what they remember occurred during the discussions they had in 2001 about a $5,366.00 kickback that took place in 1999.

In order to comply with the rules on hearsay and the requirements of the Confrontation Clause, Glick's testimony would be significantly restricted as to what he could say regarding each defendant's recounting of the incident.  In other words, Glick's testimony would essentially have to be orally <u>Bruton</u>-ized.  This court cannot conceive of how an individual on the witness stand could accomplish such a task.  Moreover, even if the witness was able to give orally <u>Bruton</u>-ized testimony, it would be virtually impossible for the jury to understand the allegations without greater context.  As defense counsel correctly observed, it would create a mine field for potential error that cannot possibly be safely navigated.  The danger presented by the evidentiary machinations required to admit this testimony substantially outweighs any minimal probative value it may have.

---

[7]The court has already held that <u>Bruton v. United States</u>, 391 U.S. 123, 135-36 (1968), prohibits use of the evidence known as the "Krieger tapes" in a joint trial.  The government chose not to try Krieger separately and not to introduce the tapes in its case-in-chief.

Finally, the court and the parties are anticipating a lengthy trial involving complicated factual issues. While the government has indicated that it may present three witnesses on these allegations, defendants have made it clear that they will be admitting a significant amount of evidence in order to defend against the government's allegations. Based on the unbelievable amount of time that has been spent by the court and the parties on the Dryja incident to date, the court has no doubt that this will consume a significant amount of time at trial and will add considerably to what is already expected to be a lengthy and confusing trial. Presentation of evidence to support the government's theory of the nefarious nature of the Dryja incident will simply be a waste of time. As previously noted, the probative value of these allegations is so minimal that the court cannot justify allowing a trial within a trial just to explain to a jury the various versions of events presented by each party, especially when one considers the low probative value of the version that is most "damaging" to some defendants.

After extensive consideration of the Dryja allegations, the court concludes that evidence of this type is precisely the reason Rule 403 exists. Each ground provided by the rule for exclusion of evidence is present. Any minimally probative value of this evidence is substantially outweighed by the danger of unfair prejudice, misleading the jury, confusion of the issues, and waste of time. See Fed. R. Evid. 403.

**AND IT IS SO ORDERED**.

_____

**DAVID C. NORTON**
**CHIEF UNITED STATES DISTRICT JUDGE**

**December 22, 2009**
**Charleston, South Carolina**